## A. H. Newell, Plff. in Err., v. T. B. Wilgus.

In an action under the act of April 22, 1794, to recover money lost at
gambling, in a game between the plaintiff and defendant only, the defend-
ant can not set off a sum lost by him in another game in which he and the
plaintiff and others took part.

The statute confers no right to set off in such action.

When the court has refused to accept a verdict which was obviously wrong
and contrary to the charge, it is proper to send the jury back to correct
such verdict.

(Argued October 26, 1887.    Decided November 7, 1887.)

October Term, 1887, No. 18, W. D., before GORDON, Ch. J.,
PAXSON, STERRETT, GREEN, and WILLIAMS, JJ.    Error to the
Common Pleas No. 2 of Allegheny County to review a judg-
ment in favor of plaintiff in an action of debt under the act of
April 22, 1794, to recover money lost in gambling.    Affirmed.

NOTE.—An action cannot be maintained for money lost in gambling under
the act of April 22, 1794, 3 Smith's Laws, 177 (Unger v. Boas, 13 Pa. 601;
Moss v. Jones, 1 W. N. C. 96); nor upon a check given to pay such debt
(Comly v. Hillegass, 94 Pa. 132, 39 Am. Rep. 774); nor upon a note,
though it has passed to an innocent holder for value (Harper v. Young,
112 Pa. 419, 3 Atl. 670; Durr v. Barclay, 8 Pa. Co. Ct. 285).

See also the following editorial notes presenting the authorities on ques-
tions arising out of gambling transactions:    Recovery for goods sold to
aid gambling business, note to Graves v. Johnson, 15 L. R. A. 836; in-
junction against enforcement of gaming contract, note to Basket v. Moss,
48 L. R. A. 844; injunction against judgment by confession for gambling
debt, note to John V. Farwell Co. v. Hilbert, 30 L. R. A. 240; effect of
award upon claim arising out of gaming contract, note to Singleton v.
Benton, 58 L. R. A. 181.

The facts appear from the following charge of the court below, EWING, J.:

This is a suit brought under the act of assembly to recover money lost in gambling. The act passed in 1794 is this: "If any person or persons shall lose any money or other thing of value at or upon any game of hazard or other play, and shall pay or deliver the same or any part thereof, the person or persons so losing and paying or delivering the same shall have a right within ten days then next thereafter to sue for and recover the money or goods so lost and paid or delivered or any part thereof, from the respective winner or winners thereof, with costs of suit, by action of debt or case, for the value of the money or thing so lost, founded on this act, to be prosecuted in any court of record, or where the value is under the sum that may be recovered before any justice of the peace within this commonwealth."

The act is a plain one; and it is proven on one side and admitted on the other that on the 25th day of July, 1885, Mr. Wilgus, the plaintiff, was engaged in a game of hazard with the defendant, Mr. Newell, and that Mr. Newell won money from him which was taken and paid over. Under the uncontradicted evidence your verdict must be for the plaintiff for some amount. The only question is as to what the amount is.

The defendant was called as for cross-examination by plaintiff, which he has a right to do under the statute, and he is not bound by his testimony; but it is before you, and is to be taken with all the other testimony; and you are the judges as to the credibility of the witnesses, and as to their knowledge of what actually occurred. It is alleged that on the afternoon of that day a game of poker was played at Mr. Newell's place between Mr. Wilgus, Mr. Newell, and two, three, or four others; neither were able to tell exactly how many participated in that game; and in the game it is alleged by Mr. Newell that he lost $460 and Mr. Wilgus says he won $120.

Just how and from whom that was won does not appear, and you are not permitted to take that into consideration in this action. If Wilgus won money from Newell in that game, Newell had a right to sue and recover it; but that game was ended, and as it was between a number of different parties and not these two alone, you cannot take it into account. We have not the evidence that would enable you to set off anything in that

transaction in this case, and the act of assembly does not provide for a set off of that kind in such a suit.

After supper Wilgus came back and he and Newell alone went into another game, the name of which has been given you. At the beginning of that game the defendant says he had $125, and that during the game he borrowed $250 from some other parties in the room, and says that at the end of the game he had some $1,030; after paying back what he had borrowed there would be $650 won in that game. Mr. Fahnestock says he was present during a considerable part of the game and that he counted part of the money as it was paid out, the bets running from $25 to $140; he does not know the precise amount, but that in his opinion there were bills on the table to the amount of $1,000 when they quit. Mr. Eberhart who was present puts it at $1,200 to $1,500. Mr. Wilgus says he lost $1,525.

Now from all the testimony you will determine how much was lost in the game between these two parties alone, and your verdict should be for that amount. The fact that the money belonged to Mrs. Wilgus is a matter of no importance in this suit. If she were the plaintiff, as perhaps she might have been under the evidence, there might be a little difference in the way you would be disposed to look at some equities in the case; but as between these two parties there is not much equity; it is simply a question of law, and the law gives the plaintiff a right to recover the amount he lost there; and that amount you will determine from the testimony as you heard it.

The jury having returned a verdict for plaintiff for $250, the court refused to accept it and made the following supplemental charge:

"The jury having, in a short time, returned a verdict for the plaintiff for $250, the court refused to accept it, stating to the jury that they had plainly ignored the instructions of the court to exclude the game of poker played among several persons in the afternoon, and should confine themselves to the games of the evening or night, between plaintiff and defendant, and that under the defendant's own testimony the least verdict they could render would be for $630."

Thereupon the jury, having again retired, rendered a verdict in favor of plaintiff; and judgment having been entered thereon, defendant took this writ, assigning as error the action of the

court in not accepting the first verdict for $250, and the supplemental charge.

*William Reardon* for plaintiff in error.

*George R. Lawrence* for defendant in error.

PER CURIAM:

The instructions which the court below gave to the jury in this case were lawful and correct, and they ought to have been obeyed. When, therefore, the court refused to accept a verdict which was obviously wrong and contrary to the charge, it was proper to send the jury back to correct that verdict.

Judgment affirmed.